UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELA M.,[1] | ) | CIVIL ACTION NO. 4:22-CV-1268 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| MARTIN O'MALLEY,[2] | ) | |
| *Commissioner of the Social Security* | ) | |
| *Administration,* | ) | |
| Defendant | ) | |

**<u>MEMORANDUM OPINION</u>**

## I.   INTRODUCTION

Angela M. ("Plaintiff"), is an adult and lives in the Middle District of Pennsylvania. In the present action, she seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States recommends that federal courts should refer to social security plaintiffs by their first name and last initial. We adopt this recommendation.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g).

This matter is before us upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, we find the Commissioner's final decision is not supported by substantial evidence. Accordingly, we will grant Plaintiff's request for further administrative review of her applications for benefits, and will remand this matter to the Commissioner for further proceedings.

## II.   BACKGROUND AND PROCEDURAL HISTORY

On January 15, 2020, Plaintiff protectively filed an application for supplemental security income under Title XVI of the Social Security Act. (Admin. Tr. 16; Doc. 22-2, p. 17). On February 28, 2020, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. *Id.* In these applications, Plaintiff alleged she became disabled on March 6, 2019, when she was 46 years old, due to the following conditions: fibromyalgia, anxiety, depression, and diabetes. (Admin. Tr. 362; Doc. 12-6, p. 7). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, see, complete tasks, concentrate, understand, follow instructions, and use her hands. (Admin. Tr. 405; Doc. 12-6, p. 50). She alleges her conditions also adversely affect her memory. *Id.* Plaintiff is a high school

graduate. (Admin. Tr. 362; Doc. 12-6, p. 8). Before the onset of her impairments, Plaintiff worked as a caregiver in a group home. (Admin. Tr. 32; Doc. 12-2, p. 33).

On July 7, 2020, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 256-259; Doc. 12-4, pp. 2-5). On January 5, 2021, Plaintiff requested an administrative hearing. (Admin. Tr. 294-295; Doc. 12-4, pp. 20-41).

On April 27, 2021, Plaintiff, assisted by her counsel, appeared by telephone, and testified during a hearing before Administrative Law Judge Jarrod Tranguch (the "ALJ"). (Admin. Tr. 41-86; Doc. 12-2, pp. 42-87). On August 31, 2021, the ALJ issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 13; Doc. June 12-2, p. 14). On October 14, 2021, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 327; Doc. 12-4, p. 73).   Plaintiff submitted new evidence to the Appeals Council that was not available to the ALJ. (Admin. Tr. 87-185; Doc. 12-2, pp. 88-186).

On June 15, 2022, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 12-2, p. 2). It considered Plaintiff's newly submitted evidence and found that the evidence did not show a reasonable probability that it would change the outcome of the decision. (Admin. Tr. 2; Doc. 12-2, p. 3).

On August 14, 2022, Plaintiff filed a complaint in the district court. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying her applications for benefits is not supported by substantial evidence, and improperly applies the law. (Doc. 1). As relief, Plaintiff requests that the court reverse the administrative decision and award benefits or in the alternative remand Plaintiff's case for a new hearing with directions to render a timely decision. (Doc. 1, p. 3).

On October 19, 2022, the Commissioner filed an answer. (Doc. 11). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial evidence. (Doc. 11). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 12).

Plaintiff's Brief (Doc. 13), the Commissioner's Brief (Doc. 18), and Plaintiff's Reply (Doc. 19) have been filed. This matter is now ready to decide.

## III.   STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals. Therefore, we will summarize the standard governing this Court's review, the sequential evaluation process that an ALJ must follow when reviewing applications for benefits, and the regulations governing an ALJ's articulation of how medical opinions and prior administrative medical findings are considered.

## A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[3] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[5] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.[6] But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[7] In determining if the Commissioner's decision is supported

---

[3] *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[4] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

[5] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[6] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[7] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

by substantial evidence under sentence four of 42 U.S.C. § 405(g), the court may consider any evidence that was in the record that was made before the ALJ.[8]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; *see*, *e.g.*, [*Richardson v. Perales*, 402 U.S. 389, 401 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[9]

---

[8] *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review)."). The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon. L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

[9] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

To determine whether substantial evidence supports the Commissioner's final decision, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[10] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[11]

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. [*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)]. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n.3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[12]

---

[10] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[11] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

[12] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

**B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[13] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[14] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.[15]  Unlike disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act.[16]

---

[13] 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).

[14] 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).

[15] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

[16] *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[17] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[18]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[19] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[20]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents

---

[17] 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a).

[18] 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

[19] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1).

[20] 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

him or her from engaging in any of his or her past relevant work.[21]  Once this burden

has been met by the claimant, it shifts to the Commissioner at step five to show that

jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and

RFC.[22]

### C.   ALJ REVIEW OF MEDICAL OPINION EVIDENCE AND PRIOR ADMINISTRATIVE MEDICAL FINDINGS

When deciding whether to grant or deny an application for benefits, an ALJ

is required to consider "all evidence" in the case record.[23] How that evidence is

considered and the extent to which an ALJ is required to articulate that consideration

is dictated by the Commissioner's regulations. Two types of evidence that often

appear in social security case records are: (1) medical opinions; and (2) prior

administrative medical findings.[24] The framework governing an ALJ's consideration

---

[21]42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064.

[22] 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

[23] 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 416.920(a)(3).

[24]  The Commissioner's regulations also carefully define these types of evidence. 20 C.F.R. § 404.1502(d) (defining medical source); 20 C.F.R. § 416.902(d) (same as 20 C.F.R. § 404.1502(d)); 20 C.F.R. § 404.1513(a)(2) (defining the types of statements that are medical opinions); 20 C.F.R. § 416.913(a)(2) (same as 20 C.F.R. § 404.1513(a)(2)); 20 C.F.R. § 404.1513(a)(5) (defining prior administrative medical finding); 20 C.F.R. § 416.913(a)(5) (same as 20 C.F.R. § 404.1513(a)(5)).

of medical opinions and prior administrative medical findings is set forth in 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c.

Turning to the question of *how* medical opinions and prior administrative medical findings are considered, under these regulations, an ALJ will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."[25] Instead, the persuasiveness of all medical opinions and prior administrative medical findings will be evaluated based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including the length of treatment, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship); and (4) specialization.[26] The ALJ may also consider any other factors that "tend to support or contradict" a medical opinion or prior administrative medical finding, including but not limited to: a source's familiarity with the other evidence in the claim, his or her understanding of the disability program and policies, and whether new evidence received after the opinion or finding was issued makes the opinion or finding more

---

[25] 20 C.F.R. § 404.1520c(a) and 20 C.F.R. § 416.920c(a).

[26] 20 C.F.R. § 404.1520c(c); 20 C.F.R. § 416.920c(c).

or less persuasive.[27] Finally, when a single source provides multiple opinions or findings, those opinions or findings will be considered together.[28]

There is, however, a significant difference between what an ALJ is required to *consider* and what an ALJ is required to *articulate*.[29] The Commissioner's regulations provide that, in most cases, the ALJ is only required to articulate how two factors are considered: supportability and consistency.[30] Additional factors will only be discussed "as appropriate."[31] Finally, like the *consideration* of multiple opinions or findings by the same source, the ALJ will *articulate* how he or she evaluated them together.[32]

The sufficiency of an ALJ's articulation of how supportability and consistency were considered is a frequently litigated issue. The consideration of an opinion or finding's "supportability" involves a review of the objective medical

---

[27] 20 C.F.R. § 404.1520c(c); 20 C.F.R. § 416.920c(c).

[28] 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a).

[29] *See Zaborowski v. Comm'r of Soc. Sec.*, No. 23-2637, 2024 WL 4220691 (3d Cir. Sept. 18, 2024) (observing that when evaluating "medical opinions in Social Security matters, administrative law judges must *consider* a range of factors, but all they must *explain* are the reasons for their decisions.").

[30] 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

[31] 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2); *see also* 20 C.F.R. § 404.1520c(b)(3) (explaining it is appropriate to explain how the other "most persuasive" factors were considered where two or more medical opinions or prior administrative medical findings about the same issue are equally well-supported and equally consistent with the case record); 20 C.F.R. § 416.920c(b)(3) (same as 20 C.F.R. § 404.1520c(b)(3)).

[32] 20 C.F.R. § 404.1520c(b)(1); 20 C.F.R. § 416.920c(b)(1).

evidence and supporting explanations that the source who issued that opinion or finding provides.[33] The consideration of an opinion or finding's "consistency" involves a review of evidence from *other* medical and nonmedical sources.[34] Thus, it naturally follows that the articulation of how "supportability" and "consistency" were considered requires a discussion of supporting evidence and explanations given by the source of the opinion or finding, and the evidence from other medical and nonmedical sources, coupled with an explanation of how that evidence supports or contradicts the limitations set forth in a source's opinion or finding.[35]

Although it is helpful for the purposes of judicial review, nothing in 20 C.F.R. § 404.1520c(b) or 20 C.F.R. § 416.920c(b) requires that an ALJ use the words "supportability" or "consistency," when articulating how those factors were considered.[36] A mere summary of the source's opinion or findings or a summary of the evidence with no analysis, however, does not satisfy an ALJ's obligation under

---

[33] 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1).

[34] 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

[35] *See*, *e.g.*, *Larkin v. O'Malley*, No. CV 23-275-LDH, 2024 WL 1675678, at *5 (D. Del. Mar. 28, 2024) (observing an ALJ adequately addressed supportability by noting the absence of a supporting explanation where a physician merely checked boxes for diagnoses and symptoms).

[36] *Zaborowski*, 2024 WL 4220691, at *2 (concluding an ALJ need not "reiterate the magic words 'support' and 'consistent' for each doctor," and upholding an ALJ's decision as consistent with 20 C.F.R. § 404.1520(b)(2) where the ALJ wove "supportability and consistency throughout her analysis of which doctors were persuasive.").

20 C.F.R. § 404.1520c(b) or 20 C.F.R. § 416.920c(b).[37] A single sentence devoted to this explanation may not be enough.[38] And the explanation must be clear enough that the Court can easily discern what evidence the ALJ is discussing in that articulation.[39]

## IV.   DISCUSSION

Plaintiff argues that substantial evidence does not support the ALJ's decision because:

(1)   The ALJ improperly afforded too little weight to opinions by treating psychiatrist Satish Mallik, M.D., and treating Certified Physician's Assistant Daryl Krouse.

(2)   Substantial evidence does not support the ALJ's determination that Plaintiff's fibromyalgia and carpal tunnel syndrome were not medically determinable.

(3)   The ALJ did not include the credibly established limitations established by Dr. Mallik and PA-C Krouse's opinions in the RFC assessment.

---

[37] *Solberg v. O'Malley*, No. CV 23-2639, 2024 WL 1943328, at *6 (E.D. Pa. Apr. 30, 2024); *Alejandro v. O'Malley*, No. 21-CV-04076-RAL, 2024 WL 1704904, at *4 (E.D. Pa. Apr. 18, 2024) (a conclusion that an opinion or finding is not persuasive unaccompanied by explanation is not sufficient).

[38] *Andrews v. Kijakazi*, No. 1:20-CV-01878, 2022 WL 617118, at *7 (M.D. Pa. Mar. 2, 2022) (finding that an ALJ did not adequately articulate why he found an opinion persuasive where he provided only one sentence to address both supportability and consistency, did not cite to any exhibits, and inaccurately claimed that the source had the benefit of reviewing the entire record).

[39] *Brownsberger v. Kijakazi*, No. 3:20-CV-01426, 2022 WL 178819, at *7 (M.D. Pa. Jan 18, 2022) (remanding where an ALJ did not provide citations to specific evidence in the record, which made impossible to review).

We will begin our analysis with a summary of the ALJ's decision, then will address Plaintiff's first argument. Because we find that remand is appropriate based on this argument, we need not address Plaintiff's second and third arguments.

### A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATIONS

In his August 31, 2021 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2020. (Admin. Tr. 18-19; Doc. 12-2, pp. 19-20). Then, Plaintiff's applications were evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between March 6, 2019 (Plaintiff's alleged onset date), and August 31, 2021 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 19; Doc. 12-2, p. 20).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, polyneuropathy, diabetes, diabetic neuropathy, osteoarthritis of the left knee, a pain disorder, obesity, a major depressive disorder, and a generalized anxiety disorder. (Admin. Tr. 19; Doc. 12-2, p. 20). The ALJ also found that, in addition to her severe impairments, Plaintiff also suffered from a medically determinable, but non-severe, impairment due to a history of cervical cancer (status-post hysterectomy). *Id.* The ALJ

determined that any alleged impairment due to fibromyalgia was not medically determinable. *Id.*

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 20-25; Doc.12-2, pp. 21-26).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) except that Plaintiff:

> could stand and/or walk for up to 4 hours in an 8-hour workday; could occasionally stoop, kneel, crouch, use ramps, and climb stairs; must avoid balancing, crawling, and climbing on ladders, ropes, or scaffolding; could occasionally tolerate exposure to extreme cold, extreme heat, and vibrations; should avoid workplace hazards such as unprotected heights and dangerous moving machinery; could perform jobs that would take no more than 30 days of training to learn, with a specific vocational preparation level of two (2) or less and which are generally classified as unskilled; could perform jobs that would be considered "low stress," in that they would involve only occasional simple decision-making and only occasional gradual changes in the work duties and work setting; and could have occasional interaction with coworkers and supervisors, but would be limited to rare/incidental contact with customers or members of the general public.

(Admin. Tr. 25-26; Doc. 12-2, pp. 26-27).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in her past relevant work as a caregiver in a group home. (Admin. Tr. 32; Doc. 12-2, p. 33).

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 33-34; Doc. 12-2, pp. 34-35). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: general office clerk, DOT #249.687-014; sorter/tester/weigher, DOT #521.687-086; and hand packager/packer, DOT #559.687-014. (Admin. Tr. 33; Doc. 12-2, p. 34).

B.    REMAND IS REQUIRED BECAUSE THE ALJ DID NOT ADEQUATELY ARTICULATE HOW HE CONSIDERED THE SUPPORTABILITY AND CONSISTENCY OF THE KROUSE AND MALLIK OPINIONS

The record in this case suggests that PA-C Krouse and Dr. Mallik are providers with Dr. Berger's office. Their treatment records appear at Exhibits 2F, 6F, 7F, 10F, and 19F of the administrative record. In the ALJ's summary of Plaintiff's mental health treatment, these examination records are often incorrectly cited as Dr. Berger's records.[40] In fact, PA-C Krouse and Mr. Mallik are not

---

[40] *Compare* (Admin. Tr. 29; Doc. 12-2, p. 30) (citing to Exhibit 2F as "treatment with Dr. Berger throughout 2018") *with* (Admin. Tr. 624-640; Doc. 12-7, pp. 176-192) (Exhibit 2F: 9/12/18 record signed by Krouse and Mallik; 10/19/18 record signed by Krouse and Mallik; 12/4/18 record signed by Krouse and Mallik;

mentioned at all in the ALJ's decision until the ALJ addresses their medical opinions.

On April 12, 2021, PA-C Krouse completed a check-box type questionnaire about Plaintiff's ability to do mental work-related activities. (Admin. Tr. 1280-1282; Doc. 12-7, pp. 832-834). In that questionnaire, PA-C Krouse was asked to rate Plaintiff's ability to perform a series of activities and tasks based on the following scale: none (absent or no limitation); mild (a slight limitation but can generally function well); moderate (more than a slight limitation, but able to function satisfactorily); marked (serious limitation, and a substantial loss in the ability to effectively function); and extreme (major limitation, and no useful ability to function).

As is relevant to this case, PA-C Krouse assessed that the symptoms of Plaintiff's mental impairments (depressive disorder and anxiety disorder) would impact her ability to do tasks typically associated with unskilled work.

---

1/8/19 record signed by Mallik); *Compare* (Admin. Tr. 29; Doc. 12-2, p. 30) (citing to Exhibit 6F p. 34 as an April 2020 appointment with "providers at the office of Dr. Berger") *with* (Admin. Tr. 890-993; Doc. 12-7, p. 542-545) (Exhibit 6F: April 2020 appointment with Krouse and Mallik); *Compare* (Admin. Tr. 29; Doc. 12-2, p. 30) (citing Exhibit 10F page 4 as an August 2020 follow up appointment with Dr. Berger) *with* (Admin. Tr. 1084-1087; Doc. 12-7, pp. 636-639) (Exhibit 10F: August 2020 treatment record signed by Krouse and Mallik).

PA-C Krouse identified "extreme" limitations in three areas: (1) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; (2) the ability to accept instructions and respond appropriately to criticism from supervisors; and (3) the ability to deal with normal work stress. *Id.*

PA-C Krouse identified "marked" limitations in nine areas: (1) ability to remember work-like procedures; (2) ability to maintain attention for a two-hour segment; (3) ability to maintain regular attendance and be punctual within customary (usually strict) tolerances; (4) ability to sustain an ordinary routine without special supervision; (5) ability to work in coordination with or proximity to others without becoming unduly distracted; (6) ability to make simple work-related decisions; (7) ability to perform at a consistent pace without an unreasonable number and length of rest periods; (8) ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and (9) ability to respond appropriately to changes in a routine work setting. *Id.*

PA-C Krouse also provided short supporting explanations at the end of each section of the questionnaire, including statements like: "Patient deals with depression, anxiety, and mood swings that interfere with overall function"; "Patient's mood swings interfere with function, poor concentration, and focus, depression, low tolerance and irritability;" "Patient deals with anxiety, lower

tolerance especially in social environments"; and "Patient unable to deal with work stressors and hold concentration and focus in her day." *Id.* She concludes by noting that her assessment is based on clinical observations, mental status examination, psychiatric evaluation, and statements from Plaintiff. *Id.* Those observations, examinations, evaluations, and statements are apparently contained in the treatment records she submitted to the Social Security Administration.

On May 3, 2021, Dr. Mallik completed the same questionnaire and assessed identical limitations. (Admin. Tr. 1773-1775; Doc. 12-8, pp. 431-433). He also provided identical explanations and stated that his assessment is also based on clinical observations, mental status examination, psychiatric evaluation, and statements from Plaintiff.

In his decision, the ALJ noted that Dr. Mallik and PA-C Krouse observed the same marked and extreme limitations in their opinions, and that those limitations (if credited) were inconsistent with the performance of full-time work. (Admin. Tr. 30; Doc. 12-2, p. 31). He concluded that these opinions were "unpersuasive," because the limitations were a "vast overestimate" of Plaintiff's mental health-related symptoms. He provided the following "articulation" of his findings:

> The claimant, in her submissions, indicated that she incurred limitation; however, the claimant's primary limitation, according to her testimony and function reports, show that the claimant's restriction is more physical in nature. Moreover, the claimant's limited mental health treatment history (devoid of more invasive care such as inpatient mental

health hospitalization, except on one brief 4-day occasion, and partial program treatment) and more benign symptomatology belies the degree of limitation noted herein. It is unclear when Dr. Malik actually saw the claimant, as it appears that his role is primarily that of signing off on the 15-minute medication check appointments, and not actually consistently interacting with the claimant. The claimant does retain the cognitive ability to complete various tasks, and in conjunction with the aforementioned mild to moderate mental health examination findings, supports a more modest degree of restriction. Accordingly, the undersigned finds these opinions unpersuasive.

*Id.*

Although he was unpersuaded by the treating source opinions, the ALJ nonetheless accounted for some degree of mental health-related limitations in the RFC assessment, and limited Plaintiff to occupations that require little (30 days or less) of training to master, were low stress, required only simple decisions on an occasional (1/3 or less of the time) basis, in an environment where there would be only gradual changes to Plaintiff's work duties or to the work setting. (Admin. Tr. 25-26; Doc. 12-2, pp. 26-27). The ALJ also limited Plaintiff to occupations requiring no more than occasional (1/3 or less of the time) interaction with supervisors and co-workers, and rare or incidental contact with the general public. *Id.*

Plaintiff raised several arguments related to the ALJ's evaluation of the Krouse and Mallik opinions.[41] We only need to address one of them—that the ALJ

---

[41] Plaintiff raised several arguments related to these opinions. First, she raises several arguments challenging the ALJ's articulation of his reasoning, including: (1)

did not adequately articulate how he considered the supportability and consistency factors and thus did not meet his obligations under 20 C.F.R. § 404.1520c(b)(2) and 20 C.F.R. § 416.920c(b)(2).

As an initial matter, the ALJ's articulation contains no citation to what records he discusses in it. Although a lack of citation will not always require remand where the Court can determine the basis on which the ALJ's rationale rests, in this case the ALJ's general references to "mild to moderate mental health examination findings" "limited mental health history" and "benign symptomatology" are not clear enough to suggest which provider, medical practice, or clinician he is referring to. The record in this case contains more than 1,300 pages of medical records alone, divided into 19 exhibits. Given the size of this record, and the number of different providers Plaintiff sought treatment from for both her physical and mental health-related

---

the ALJ did not articulate his consideration of the supportability and consistency factors; and (2) the explanation provided is internally inconsistent.

Second, she challenges the substance of the ALJ's reasoning, and argues: (1) the ALJ inaccurately characterized Plaintiff's mental health treatment as "conservative," to support his evaluation of the medical opinions; (2) the ALJ improperly relied on Plaintiff's mental status examinations to support a finding that the opinions lacked supportability; (3) the ALJ improperly failed to acknowledge the inextricable connection between physical pain and mental health-related symptoms; and (4) the ALJ did not consider or discuss documented instances of extreme political paranoia when evaluating the medical opinions.

impairments, these generalizations make it challenging to effectively review the ALJ's rationale.

Regarding supportability, it is not clear in the ALJ's rationale, or in the decision as a whole, whether the ALJ was aware that "Dr. Berger's" records were primarily from PA-C Krouse and Dr. Mallik. These notes, including the clinical observations, mental status examinations, and psychiatric evaluations they contain, were referenced in the opinions. It is also not clear whether the ALJ was referring to these records in his explanation about how each opinion's supportability was considered. Furthermore, the ALJ does not acknowledge that any supporting explanations were provided in the sources' check-box opinions, or address those supporting explanations.

Regarding consistency, the ALJ's explanation is similarly conclusory. For example, the ALJ suggests that the degree of limitation assessed in the opinions is inconsistent with Plaintiff's ability to complete "various tasks." (Admin. Tr. 30; Doc. 12-2, p. 31). The ALJ does not list any example of what the "various tasks" are or direct the Court to a particular record and does not explain why completing these unidentified tasks is inconsistent with the limitations in the opinions. Moreover, like the supportability analysis, to the extent the ALJ attempts to articulate his consideration of the consistency of these opinions with evidence from other medical and nonmedical sources, his general references to "mild to moderate examination

findings" without any accompanying explanation or citation to the record does not permit meaningful review.

Therefore, we conclude that the ALJ did not meet his obligation under 20 C.F.R. § 404.1520c(b)(2) or 20 C.F.R. § 416.920c(b)(2) to articulate how he considered the supportability and consistency factors to determine the overall persuasiveness of these opinions. Such errors of law denote a lack of substantial evidence.[42]

The Commissioner does not address the issue of whether this error is harmless. We cannot say that it is. In Social Security Appeals, remand is warranted only if there is reason to believe it might lead to a different result.[43] The party alleging the error, in this case Plaintiff, typically bears the burden of showing it was harmful.[44] Here, this burden has been met.

---

[42] *Arnold*, 2014 WL 940205, at *1 ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.").

[43] *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (requiring that a social security plaintiff explain how the error to which he points could have made any difference); *see also Coy v. Astrue,* No. 8-1372, 2009 WL 2043491 at *14 (W.D. Pa. Jul. 8, 2009) ("No principle of administrative law 'require[s] that we convert judicial review of agency action into a ping-pong game" in search of the perfect decision.") (citing *NLRB v. Wyman–Gordon Co.,* 394 U.S. 759, 766 n. 6 (1969)).

[44] *Holloman*, 639 F. App'x at 814 ("Ordinary harmless error review, in which the appellant bears the burden to demonstrate the harm, is applicable to administrative appeals.") (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

Plaintiff argues that the Krouse and Mallik opinions include limitations that were not accounted for in the ALJ's RFC. The ALJ's failure to adequately articulate how he considered the consistency and supportability of these opinions calls his consideration of them into question. Affording full consideration to these opinions, and the more restrictive limitations they contain, could result in a different outcome here.[45] Therefore, this error is not harmless, and remand is appropriate.

## C.   PLAINTIFF'S REMAINING ARGUMENTS

As we acknowledged in the beginning of our analysis section, Plaintiff also raises two other arguments. We need not, however, address them because remand is required for further consideration of the medical opinion evidence. To the extent any further error exists, it may be addressed on remand.

[The next page contains the Conclusion]

---

[45] We take no position on whether the ALJ should have found these opinions persuasive, or more broadly whether the ALJ should have granted Plaintiff's applications for benefits.

## V.    CONCLUSION

Accordingly, we conclude that Plaintiff's request for further administrative review of her applications will be GRANTED as follows:

(1)    This case will be REMANDED to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

(2)    Final judgment will be issued in Plaintiff's favor by separate order.

(3)    Appropriate Orders will be issued.

Date: September 26, 2024                BY THE COURT

                                                            _s/William I. Arbuckle_
                                                            William I. Arbuckle
                                                            U.S. Magistrate Judge